IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JESS KRUCHOSKI,           :
           :
           :
   Plaintiff,      :
           :
           :      CIVIL ACTION NO.
           :      1:17-CV-00577-LMM
v.           :
           :
MIMEDX GROUP, INC. and  :
PARKER H. PETIT,    :
           :
           :
   Defendants.    :
           :
           :

## ORDER

This case comes before the Court on Defendants' Motions to Dismiss or, in the Alternative, Motions to Stay [17, 18], and Plaintiff's Motion to Stay [36]. After due consideration, the Court enters the following Order:

## I.    BACKGROUND[1]

Plaintiff is a former employee of Defendant MiMedx Group ("MidMedx), a publicly-traded company with about 500 employees. Dkt. No. [1] ¶ 1. Plaintiff alleges that, over the course of his employment at MiMedx, he discovered that the

---

[1] The facts in this section are taken from Plaintiff's Complaint and construed in a light most favorable to Plaintiff as the non-moving party on the Motion to Dismiss.

company was engaged in a fraudulent revenue recognition scheme orchestrated, at least in part, by MiMedx's CEO, Defendant Petit. Id. ¶ 2. Plaintiff objected to the scheme and eventually reported the fraud. Id. ¶ 3. When Plaintiff reported the fraud, Plaintiff alleges that MiMedx fired him. Id. ¶ 3.

However, before reporting the fraud, and when Plaintiff was merely objecting to the scheme, he was told that he would not be considered for a promotion. Id. ¶ 51. Instead, MiMedx promoted Steve Blocker, another MiMedx employee, into the open position. Id. According to Plaintiff, MiMedx promoted Blocker without conducting interviews with any other candidates or even posting the position within the company. Id. Plaintiff further alleges that Blocker had been Plaintiff's subordinate, had less tenure, and was not as skilled at his job as Plaintiff. Id. ¶ 52. Plaintiff contends that he was specifically told that he was not considered for the promotion because he was "too vocal" with his objections to MiMedx's alleged fraud. Id. ¶ 54.

By November 2, 2016, Plaintiff alleges that the scheme had enlarged. Id. ¶ 68. At that point, Plaintiff and Luke Tornquist, another employee Plaintiff supervised, decided to report directly to MiMedx management and legal counsel their belief that the scheme was illegal. Id. The next day, Plaintiff received a call from Blocker, asking if Plaintiff really wanted to sign his name to the report because, if he did, it would "not be good for" him. Id. ¶ 69. Blocker reminded Plaintiff about his wife and children, and cautioned him to "think about his family." Id.

2

On November 4, 2016, Plaintiff and Tornquist supplemented their report. Id. ¶ 73. On November 7, 2016, Plaintiff was placed on a performance improvement plan, which threatened termination. Id. ¶ 74. According to Plaintiff, this plan skipped several levels of progressive discipline outlined in MiMedx's personnel policies. Id. ¶ 75. Plaintiff alleges that, as part of the improvement plan, Plaintiff was specifically reprimanded for his report. Id.

On November 22, 2016, MiMedx cut Plaintiff's commission such that he lost $3,500 to $4,000 in monthly commissions. Id. ¶ 81. Plaintiff alleges that MiMedx tried to characterize his commission cut as a plan that predated his reports. Id. ¶ 82. However, Plaintiff alleges that on October 19, 2016, before Plaintiff made his reports, Blocker informed him that his commission would *not* be cut. Id.

On November 22, 2016, MiMedx agreed to mediate its dispute with Plaintiff and Tornquist. Id. ¶ 83. Plaintiff alleges that this mediation was merely to delay Plaintiff from filing suit and give MiMedx enough time to complete a retaliatory investigation into Plaintiff. Id. MiMedx started this investigation by contacting several MiMedx employees and asking them about alleged misconduct by Plaintiff and Tornquist. Id. ¶ 84.[2]

On December 12, 2016, the parties attended a mediation in Minneapolis, Minnesota. Id. ¶ 85. However, according to the Complaint, MiMedx filed suit

_____

[2] Through the pending Motions to Dismiss, the Court has learned that the investigation allegedly revealed that Plaintiff and Tornquist had been selling competitors' medical products to MiMedx customers. Dkt. No. [17-1] at 1.

3

against Plaintiff in a Florida state court that same day for breach of his employment agreement (the "Florida Action").[3] Id. ¶ 88. Plaintiff and Tornquist were eventually terminated from employment on December 12, 2016, in Minnesota. Id. ¶ 86.

After his termination, Plaintiff alleges that, in a letter sent to the Minneapolis Veterans Administration ("VA") Medical Care System, Petit accused Plaintiff of being among a group of individuals that had "published false information about MiMedx in an attempt to discredit the positive relationship [the Company has] with the Veterans Administration." Id. ¶ 88. The letter further stated that Plaintiff had violated his confidentiality and non-compete agreement with MiMedx. Dkt. No. [1-3] at 2.

According to Plaintiff, he never made such a statement. Dkt. No. [1] ¶ 88. Plaintiff then alleges that Petit and MiMedx made other false statements about him, though he fails to allege what those false statements were. Id.

Plaintiff has now brought six claims against MiMedx and Petit. They are: (1) retaliation in violation of the Dodd-Frank Act, 15 U.S.C. § 78u-6(h) against MiMedx; (2) unlawful discharge in violation of Minnesota Statutes Section 181.931 Subdivision 1(1) against MiMedx; (3) defamation in violation of O.C.G.A. §§ 51-5-1 *et seq.* against MiMedx; (4) defamation in violation of O.C.G.A. §§ 51-5-1 *et seq.* against Petit; (5) common law defamation against MiMedx; and (6) common law defamation against Petit. Plaintiff also requests attorney's fees and

---

[3] The employment agreement will be discussed in more detail *infra*.

costs "pursuant to statute" but does not indicate which statute. Defendants now move the Court to dismiss this case under *forum non conveniens*, or, in the alternative, stay the case pursuant to the Colorado River abstention doctrine pending resolution of the Florida Action.

While Plaintiff opposes Defendants' Motions, he also asks the Court to stay this case pending resolution of the Supreme Court's decision in Somers v. Digital Realty Trust, Inc., 850 F.3d 1045, (9th Cir. 2017), concerning what constitutes a whistleblower. However, because the Court finds that this case should be dismissed under *forum non conveniens* for the reasons discussed below, the Court does not reach this stay issue.

## II.   DISCUSSION

While the two Defendants make the same requests, the Court will discuss them separately, starting with MiMedx.

### a.  MiMedx's Motion to Dismiss or Stay

MiMedx argues that the Court must dismiss Plaintiff's claims against MiMedx, without prejudice, pursuant to *forum non conveniens* because Plaintiff agreed in his employment agreement to litigate all claims arising from or related to his employment agreement in Florida state or federal court. Normally, a court may simply transfer a case with a valid forum selection clause under 28 U.S.C. § 1404(a). See 28 U.S.C. § 1404(a). However, MiMedx argues that the Court cannot simply transfer the case because Plaintiff's claims constitute compulsory counterclaims in the Florida Action. Because § 1404(a) does not allow for transfer

to state courts, Defendants argue that the Court must dismiss under the doctrine of *forum non conveniens*.

The Supreme Court has held that the appropriate way to enforce a forum selection clause providing a state forum is through the doctrine of *forum non conveniens*. <u>Atl. Marine Const. Co., Inc. v. Dist. Ct. of W. Dist. of Tex.</u>, 187 L.Ed.2d 487, 134 S. Ct. 568, 580 (2013). However, the Court need not decide, at this moment, whether the claims must be dismissed under *forum non conveniens* or transferred under § 1404(a) because the analysis is the same. <u>Id.</u> ("Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer."). Instead, the Court must first determine whether either doctrine would apply.

Normally, in a § 1404(a) motion or *forum non conveniens* motion not involving a forum selection clause, "the district court must evaluate both the convenience of the parties and various public-interest considerations." <u>Id.</u> at 581. "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" <u>Id.</u> (quoting 28 U.S.C. § 1404(a)).

"The calculus changes, however, when the parties' contract contains a valid forum selection clause, which 'represents the parties' agreement to the most

proper forum.'" <u>Id.</u> (quoting <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 31 (1988)). "For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' 'a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.'" <u>Id.</u>

The presence of a valid forum selection clause "requires district courts to adjust their usual § 1404(a) [or *forum non conveniens*] analysis in three ways." <u>Id.</u> First, "the plaintiff's choice of forum merits no weight." <u>Id.</u> Rather, "the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum [or dismissal] is unwarranted." <u>Id.</u> Second, "a court evaluating a defendant's § 1404(a) motion to transfer [or dismiss] based on a forum-selection clause should not consider arguments about the parties' private interests." <u>Id.</u> at 582. "As a consequence, a district court may consider arguments about public-interest factors only." <u>Id.</u> However, those factors "rarely defeat a transfer motion." <u>Id.</u> As such, the practical result is that, if the forum-selection clause applies, it should control except in unusual cases. <u>Id.</u> Lastly, "when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." <u>Id.</u>

As such, because the § 1404(a) and *forum non conveniens* analysis is the same, and essentially asks only if there is a valid forum selection clause, <u>see</u> <u>id.</u>, the Court must first determine if the forum selection clause applies. If the clause

applies, the Court will then determine if the claims are compulsory counterclaims to the Florida Action such that they must be dismissed rather than transferred.

As discussed above, Plaintiff and MiMedx entered into an employment agreement (the "Agreement") before Plaintiff began working at the company. The Agreement consists of one non-compete and non-solicitation agreement and one confidentiality agreement. The non-compete portion states that, "[i]n consideration of the employment of [Plaintiff] and the salary and other remuneration and benefits paid by [MiMedx] to [Plaintiff] while [Plaintiff] is employed by [MiMedx], and other good and valuable consideration, the receipt and sufficiently of which are hereby acknowledged by the parties, the parties agree:" (1) that Plaintiff will not engage in any competitive business while employed by MiMedx; and (2) that Plaintiff, for one year after termination of employment with MiMedx, will not directly or indirectly perform the same or substantially the same job duties for any business that competes with MiMedx. Dkt. No. [17-2] at 30-31.

The non-compete portion then provides that it should be governed and construed in accordance with Florida law. Id. at 31. Further, the non-compete portion dictates that "[a]ny lawsuit, claim, or other legal proceeding *arising out of or relating to* this Agreement shall be brought exclusively in the federal or state courts located in the State of Florida." Id. (emphasis added)

The confidentiality portion indicates that Plaintiff agreed to, during employment and three years after employment, "hold all Confidential

Information in confidence and shall not directly or indirectly divulge . . . any Confidential Information." Id. at 33. The confidentiality portion similarly requires any lawsuit "arising out of or relating to" the confidentiality portion be litigated in Florida using Florida law. Id. at 34.

MiMedx contends that Plaintiff's current claims against MiMedx fall within the broad scope of the Agreement's forum selection clauses. First, MiMedx argues that the defamation claim arises out of or relates to the Agreement because MiMedx is accused of falsely stating that Plaintiff breached the Agreement. See Dkt. No. [1-3] at 2 (allegedly defamatory letter to VA). Specifically, the letter states, in relevant part, "We discovered these individuals were violating their confidentiality, non-compete agreements and their duty of loyalty to MiMedx by actually selling competitors' products into our customers' accounts." Id. According to MiMedx, it could not be clearer that the defamation claim arises from or relates to the Agreement as the Agreement is the central focus of the allegedly defamatory remarks. Additionally, and related, MiMedx argues that it will use the Agreement to defend against the defamation claims by asserting that its statements concerning Plaintiff's alleged breach of the Agreement are true.

Second, MiMedx argues that the retaliation claims also relate to or arise from the Agreement because MiMedx' defenses rely upon the terms of the Agreement. Specifically, MiMedx argues that Plaintiff's retaliation claims must be analyzed under the McDonell Douglas burden shifting analysis. Under that scheme, the plaintiff must first allege a *prima facie* case of retaliation. Hall v.

<u>Teva Pharm. USA, Inc.</u>, No. 15-CV-61536, 2016 WL 5661630, at *5 (S.D. Fla. Sept. 30, 2016) (confirming use of <u>McDonnell Douglas</u> for Dodd-Frank Act retaliation claims). After the plaintiff has proven his *prima facie* case, the burdens shifts to the employer to articulate a legitimate non-discriminatory reason for any adverse action. <u>Id.</u> It is at this point MiMedx contends it will have to rely on the Agreement to prove that it fired Plaintiff for breaching his contract rather than for his alleged whistleblowing activity. Because these issues cannot be adjudicated without analyzing or referring to the Agreement, MiMedx contends that the claims fall within the scope of the clause.

As support, MiMedx cites <u>John Wyeth & Brother Ltd. v. Cigna Int'l Corp.</u>, 119 F.3d 1070 (3d Cir. 1997).[4] In that case, the plaintiff sought declaratory judgment against the defendant insurer for pre-1990 products liability claims brought in the United Kingdom. <u>Id.</u> at 1071. The defendant moved the district court to transfer/dismiss based on a forum selection clause in a 1990 agreement. <u>Id.</u> The plaintiff argued that the 1990 agreement forum selection clause should not apply because the claims predated the agreement. <u>Id.</u> at 1073. The defendant argued, however, that it had defenses arising from or relating to the 1990 agreement such that the declaratory judgment claim at least related to the 1990 agreement and its forum selection clause. <u>Id.</u> The district court held that "the

---

[4] MiMedx also cited <u>Satelites Mexicanos, S.A. de C.V. v. Turn Key, S.A. de C.V.</u>, 847 So.2d 1068 (Fla. Dist. Ct. App. 2003), for the same proposition described *infra*.

defenses [the defendant] asserted against [the plaintiff's] suit in its Answer []
implicate the 1990 Agreement" such that dismissal was warranted.[5] Id.

The Third Circuit affirmed the district court's decision. Specifically, the
Circuit court held, "Here, as we have noted, the clause is broadly worded,
extending to any dispute 'arising . . . in relation to.' This language easily
encompasses a dispute in which the 1990 Agreement is raised as a defense." Id. at
1076.

MiMedx argues that this case is similar because, like the 1990 agreement in
Wyeth, the Agreement in this case uses the broad "arising from" and "in relation
to" language. Additionally, like in Wyeth, MiMedx plans on using the Agreement
as a defense to Plaintiff's retaliation and defamation claims. As such, under the
Third Circuit's reasoning, MiMedx argues that the forum selection clause
encompasses Plaintiff's retaliation claims.

Lastly, MiMedx argues that the defamation claim and the retaliation claims
clearly arise from or relate to the Agreement because, in the Florida Action, based
on Plaintiff's alleged breach of the Agreement, Plaintiff used its defamation and
retaliation allegations as a defense to MiMedx's equitable claims. Specifically, in
Plaintiff's response in opposition to MiMedx's motion for preliminary injunction

---

[5] The district court also held that the "arising in relation to" language of the 1990
agreement was broad enough to encompass the plaintiff's claim for costs that the
plaintiff specifically alleged were "unreimbursed" by the 1990 agreement. Id.
According to the district court, dismissal was warranted on that ground as well.
Id. However, the district court's language indicates that both the "unreimbursed
by the 1990 agreement" allegation in the complaint and the defenses arising from
the agreement were independent reasons for dismissal. Id.

in the Florida Action, Plaintiff argued that MiMedx was not entitled to equitable relief pursuant to the doctrine of unclean hands because MiMedx had defamed and retaliated against Plaintiff. Dkt. No. [17-11] at 14. Plaintiff went so far as to attach the Complaint from this case to his opposition brief in the Florida Action.

Plaintiff first counters that MiMedx has misconstrued the nature of the Agreement. That is, Plaintiff contends that the Agreement does not purport to govern Plaintiff's employment at MiMedx as a whole; but rather, it merely purports to establish non-competition, non-solicitation, and confidentiality. As such, Plaintiff argues that his claims do not relate to or arise out of the Agreement at all as Plaintiff has asserted claims unrelated to competition, solicitation, and confidentiality.

While the Court agrees that the Agreement only governs those three aspects of Plaintiff's relationship with MiMedx, the Court disagrees that this unequivocally prevents MiMedx from relying on its forum selection clause. That is, under the forum selection clause, Plaintiff's claims need not arise from the Agreement to be governed by the forum selection clause. Instead, they need only *relate* to the Agreement in some way. Just because Plaintiff's claims do not specifically deal with his obligations under the Agreement, that does not mean they cannot still relate to the Agreement. As such, the Court will not deny MiMedx's Motion simply because Plaintiff's claims do not specifically arise from his obligation of non-competition, non-solicitation, and confidentiality.

Plaintiff next argues that, even if the claims need not arise from the Agreement, the claims do not even *relate* to the Agreement. According to Plaintiff, under Eleventh Circuit law, claims only relate to a particular contract or agreement, "when 'the dispute occurs as a fairly direct result of the performance of contractual duties.'" Dkt. No. [19] at 7 (quoting Bah. Sales Assoc., LLC v. Byers, 701 F.3d 1335, 1340-41 (11th Cir. 2012)).[6] Plaintiff argues that, in this situation, the defamation and retaliation claims are not the result, directly or indirectly, of any obligations under the Agreement. As such, Plaintiff contends, the claims cannot relate to the Agreement.

As support, Plaintiff cites Shapiro v. American Bank, No. 3:12-CV-1358-AC, 2013 WL 6157266, at *7-8 (D. Or. Aug. 8, 2013). In that case, the plaintiff brought suit in Oregon for violations of Oregon's whistleblower statute and Oregon's anti-discrimination statute based on the plaintiff's whistleblowing activity. Shapiro, 2013 WL 6157266 at *1. The defendant moved to dismiss or

---

[6] Plaintiff also cites Thunder Marine, Inc. v. Brunswick Corp., No. 8:06-CV-384-T17 EAJ, 2006 WL 1877093, at *7 (M.D. Fla. July 6, 2006), for the notion that, if a cause of action "is not dependent upon the relationship embodied in the agreement, not connected to any terms of the agreement, not derived from the rights granted in the agreement, and involves acts by the defendant wholly unrelated to the agreement," it does not "arise out of the agreement." Thunder Marines, 2006 WL 1877093 at *7. However, the Court has already determined that the claims need not arise out of the Agreement. Instead, the question is whether the claims *relate* to the Agreement. This citation does not indicate that, for claims to relate to an agreement, these stringent requirements must be met. Instead, as discussed above, the Eleventh Circuit only requires that, for claims to relate to an agreement, the dispute must occur "as a fairly direct result" of the contractual obligations. Byers, 701 F.3d at 1340-41.

13

transfer the case to Maryland based on the forum selection clause in the parties' non-compete agreement. Id. at *2.

The court held that, "whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contracts." Id. at *4 (quoting Manetti/Farrow v. Gucci Am., Inc., 858 F.2d 509, 514 (9th Cir. 1988)). The court determined that the plaintiff's tort claims arising from his whistleblowing activity had nothing to do with the obligations outlined in the non-compete agreement. Id. at *6. As such, the court determined that there was no need to interpret the agreement and therefore no need to apply its forum selection clause. Id. Plaintiff argues that, like the agreement in Shapiro, the Court need not look to the Agreement or interpret the Agreement to resolve Plaintiff's claims as they arise solely from Plaintiff's whistleblowing activity.

However, as MiMedx argues, the court in Shapiro fails to mention whether the defendant sought to use the non-compete agreement as a defense to the plaintiff's claims. Here however, MiMedx does intend to use the Agreement as a defense to both Plaintiff's retaliation claims and his defamation claims. In that way, resolution of Plaintiff's claims will necessarily involve interpretation of the Agreement.

Next, Plaintiff appears to argue that, even if MiMedx uses the Agreement as a defense to Plaintiff's claims, the forum selection clause still does not apply. Specifically, Plaintiff attempts to distinguish this case from Wyeth, where, as discussed above, the Third Circuit held that the forum selection clause of the

1990 agreement applied because the defendant sought to use the agreement as a defense. Wyeth, 119 F.3d at 1076. Plaintiff appears to argue that, in Wyeth, the defendant's defenses were specifically granted in the 1990 agreement. According to Plaintiff, in this case, the Agreement does not set forth that MiMedx can discriminate or retaliate against Plaintiff.

However, Plaintiff's interpretation of Wyeth is overly narrow. While certainly in that case the defenses may or may not have been outlined or provided for in the 1990 agreement itself, the Third Circuit's central holding was merely that, when an agreement is used as a defense, the plaintiff's claims necessarily relate to that agreement. Id. There is no discussion that the defenses must be outlined in the agreement or provided for in the agreement as Plaintiff suggests. In addition, though the Court is not bound by Wyeth, the Court finds its reasoning compelling.

Based on the foregoing, the Court agrees with MiMedx that Plaintiff's claims at least relate to the Agreement. That is, if MiMedx uses the Agreement as a defense to Plaintiff's claims, the resolution of the claims necessarily turns on the Court's interpretation of the Agreement. Specifically, for the defamation claims, the Court would have to determine if MiMedx's letter to the VA was defamatory, or whether it was true that Plaintiff breached the Agreement. As to the retaliation claims, as MiMedx argues, under the McDonnell Douglas framework, the Court will have to determine whether MiMedx fired Plaintiff for

non-retaliatory reasons.[7] Central to that inquiry is whether MiMedx could fire Plaintiff for breaching the Agreement. In both instances, the Court will necessarily have to interpret and analyze the Agreement. As such, Plaintiff's claims fall within the forum selection clause.[8]

At one point, it appears that Plaintiff argues against transfer or dismissal under the forum selection clause based on Tornquist's case. That is, Plaintiff argues that his claims should be adjudicated alongside Tornquist's case in this Court. However, Tornquist is not a party to this case and Plaintiff has failed to cite any authority showing that the Court should not apply a valid forum selection clause based on another party's case.

Because Plaintiff has failed to meet his burden to show that the forum selection clause does not or should not apply, the next question is whether the Court should transfer or dismiss the claims. MiMedx argues that the Court must dismiss the claims because they are compulsory counterclaims to the Florida Action and the Court cannot transfer claims to state court. See 28 U.S.C. § 1404(a).

---

[7] Plaintiff did not rebut the fact that McDonnell Douglas applies or that MiMedx could use the Agreement as a defense.

[8] The Court notes that Plaintiff failed to explain why, if the claims in this case were so unrelated to the Agreement, Plaintiff attached the Complaint to his filings in the Florida Action which is entirely about his alleged breach of the Agreement. Further, Plaintiff failed to explain why, if his claims are so unrelated to the Agreement, he would use them as a defense to MiMedx's allegations that he breached the Agreement. In addition to MiMedx's use of the Agreement as a defense, these facts further demonstrate that Plaintiff's claims are related to the Agreement such that its forum selection clause applies.

"The purpose of the compulsory counterclaim rule is to eliminate multiplicity of litigation. To this end, the Florida courts have opined that the rule should be given a 'broad, realistic interpretation.'"[9] <u>Montgomery Ward Dev. Corp. v. Juster</u>, 932 F.2d 1378, 1381 (11th Cir. 1991) (quoting <u>Stone v. Pembroke Lakes Trailer Park, Inc.</u>, 268 So.2d 400, 402 (Fla. App. 1972)). Florida courts apply a four-part "transaction or occurrence" test to determine whether a claim is compulsory: (1) are the issues of fact and law raised by the claim and counterclaim largely the same; (2) would res judicata bar the subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) will substantially the same evidence support or refute the plaintiff's claim as well as the defendant's counterclaim; and (4) is there any logical relation between the claim and the counterclaim? <u>Id.</u> "An affirmative answer to any of the foregoing questions would mean that the counterclaim is compulsory. <u>Id.</u> (citing <u>Roberts v. Nat'l Sch. of Radio & Television Broad.</u>, 374 F. Supp. 1266, 1270 (N.D. Ga. 1974)).

MiMedx argues that Plaintiff's claims are undoubtedly "logically related" to MiMedx' claims in the Florida Action. Specifically, MiMedx argues that the facts asserted in the Florida Action activate MiMedx's defenses to Plaintiff's claims in this action. That is, MiMedx has asserted in the Florida Action that Plaintiff breached the Agreement. MiMedx will use that assertion to defend against

---

[9] The Court uses Florida law because the forum selection clause applies to these claims and specifically indicates that Florida law should be used.

Plaintiff's claims that MiMedx lied about Plaintiff's breach and fired him for something other than his alleged breach.

Plaintiff's only response is that the Florida state courts do not have jurisdiction to hear his Dodd-Frank Act retaliation claims. The Dodd-Frank Act is an amendment to the Securities Exchange Act of 1934. Congress chose to provide exclusive federal jurisdiction for claims brought under the Securities Exchange Act. 15 U.S.C. § 78aa ("The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter."). However, the language of the Dodd-Frank Act is permissive. See 15 U.S.C. § 78u-6. It states, "An individual who alleges discharge . . . in violation of subparagraph (A) *may* bring an action under this subsection in the appropriate district court of the United States." 15 U.S.C. § 78u-6 (emphasis added). Congress' use of permissive language ordinarily supports concurrent state court jurisdiction. See Lane v. Cent. Bank of Ala., N.A., 756 F.2d 814, 817 (11th Cir. 1985) ("[T]he permissive 'may' is entirely consistent with the presumption of concurrent state court jurisdiction.") (citing Charles Dowd Box Co. v. Courtney, 368 U.S. 502 (1962)).

Few courts have addressed this apparent conflict between the permissive language of § 78u-6 and the mandatory language of § 78aa. However, in Igwe v. City of Miami, No. 1:15-CV-21603-LENARD, 2016 WL 7671370, at *6 (S.D. Fla. Sept. 29, 2016), the court engaged in a lengthy discussion as to why the Dodd-Frank Act allows concurrent state court jurisdiction. First, the court noted that the two sections have different jurisdictional precepts; one requiring exclusive

federal jurisdiction and the other allowing concurrent state jurisdiction. Igwe, 2016 WL 7671370 at *6. The court then discussed how some courts have, in passing, held that federal courts have exclusive jurisdiction over Dodd-Frank claims. Id. Specifically, the court looked at Simons v. Ditto Trade, Inc., No. 14 C 309, 2014 WL 6488338, at *2 (N.D. Ill. Nov. 19, 2014), which Plaintiff cited in his brief in support of his position. The Igwe court pointed out that, in determining that federal courts have exclusive jurisdiction, the Simons court relied exclusively on the language of the Securities Exchange Act and did not consider the language of the Dodd-Frank Act.

The Igwe court determined that relying on the language of the Securities Exchange Act alone was insufficient. Instead, the court had to reconcile the conflicting statutes using traditional rules of statutory construction. Id. First, relying on Eleventh Circuit law, the court determined that, when reconciling conflicting statues, "a specific statute will control over a general statute and a more recently enacted statute will control over older statutes." Id. (quoting Fla. VirtualSch. v. K12, Inc., 773 F.3d 233, 239 (11th Cir. 2014)). The court determined that the language of the Dodd-Frank act was more specific than the language of the Securities Exchange Act because it applied only to Dodd-Frank Act whistleblower violations while the Securities Exchange Act language applied to *all* claims under the Act. Id. Additionally, the court determined that the Dodd-Frank Act, enacted in 2010, was much more recent than the Securities Exchange

Act, enacted in 1934. Id. Therefore, the court concluded that state courts have concurrent jurisdiction to hear Dodd-Frank Act whistleblower claims.

In coming to that decision, the court also relied upon policy reasons. Specifically, the court found that this result "is in harmony with the presumption—rooted in federalism—that state courts have concurrent jurisdiction over federal claims." Id. (citing Metro Edison Co. v. Penn. Pub. Util. Comm'n, 767 F.3d 335, 359 (3d Cir. 2014)).

The Court agrees with the holding and reasoning in Igwe. The Court cannot simply ignore the fact that the two sections have conflicting meanings and simply apply the language of the Securities Exchange Act as the Simons court did and as Plaintiff urges. Instead, the Court must reconcile these conflicts and determine which jurisdictional rule Congress intended. As the court in Igwe determined, the Dodd-Frank Act is newer and applies to a very specific subset of Securities Exchange Act claims. Based on Eleventh Circuit law, the newer and more specific statute controls. K12, 773 F.3d at 239.[10] Thus, the Dodd-Frank Act language

---

[10] The Court notes that, aside from Simons, all of Plaintiff's cited cases in support of his argument that state courts lack jurisdiction predate the Dodd-Frank Act and therefore necessarily do not discuss the conflicting jurisdictional precepts. See MM&S Fin. V. NASD, Inc., 364 F.3d 908, 911 (8th Cir. 2004); Bannan v. Einstein, 804 F.2d 1041, 1043 (8th Cir. 1986). However, Plaintiff does cite one 1945 case from a New York Court of Appeals that, according to Plaintiff, held that the Securities Exchange Act's mandatory language controls over other permissive provisions found within the Securities Exchange Act. Am. Distilling Co. v. Brown, 64 N.E.2d 347 (N.Y. Ct. App. 1945). However, the Court is not persuaded by that case because, unlike in Igwe, the New York state court did not apply Eleventh Circuit rules of statutory construction in making its decision.

controls and the Florida state court can likely hear Plaintiff's Dodd-Frank Act claims.[11]

Plaintiff's only other argument against dismissal is that the practical effect is untenable. That is, Plaintiff argues that MiMedx is asking the Court, which has inherent power to hear all of his claims, to split them apart and force him to litigate in geographically disparate locations. However, Plaintiff's argument presupposes that his Dodd-Frank Act retaliation claims cannot be heard in state court. Because they can be heard in state court, Plaintiff's argument is no longer valid.

Importantly, Plaintiff fails to make any actual argument that his claims against MiMedx are not compulsory counterclaims. That is, Plaintiff makes no argument to rebut MiMedx's contention that his claims are "logically related" to MiMedx's claims in the Florida Action. While Plaintiff certainly argued that his claims did not arise out of or relate to the Agreement, to the extent that would preclude his claims from being compulsory counterclaims, the Court has already determined they are at least related to the Agreement in some way. Because Plaintiff has not presented any other arguments, MiMedx's Motion to Dismiss is **GRANTED** as to the claims asserted against it.

---

[11] Of course, although the Court concludes that the Florida state court likely has jurisdiction to consider the Dodd-Frank Act claims, the Court is mindful that it will ultimately be the state court deciding that particular issue.

### b. Petit's Motion to Dismiss or Stay

Plaintiff's only claims against Petit are for defamation in violation of Georgia law and defamation in violation of the common law based on the letter to the VA. See Dkt. No. [1]. Petit contends that these claims should be dismissed for the same reasons provided by MiMedx. That is, Petit argues first that Plaintiff's claims against him relate to the Agreement, and second, that Petit is closely related to the currently-pending Florida Action.

The first question is how Petit, a non-signatory to the Agreement, can invoke the Agreement's forum selection clause. Petit argues that, based on Eleventh Circuit case law, a non-signatory may invoke a contract's forum selection clause if the non-signatory is "closely related" to the employment contract. As support, Petit cites Vickers v. Wells, No. 1:05-CV-0930-RWS, 2006 WL 89858, at *3-5 (N.D. Ga. Jan. 11, 2006).

In Vickers, the plaintiff sued the president of her former employer for libel and slander. Vickers 2006 WL 89858 at *2. Specifically, the plaintiff complained that the defendant had published a letter regarding her termination that falsely accused her of embezzlement and fraud. Id. The defendant moved to dismiss the case for improper venue based on the forum selection clause in plaintiff's employment agreement with the company. Id. The plaintiff opposed that motion, arguing that the defendant lacked standing to enforce the forum selection clause. Id. at *3. Specifically, the plaintiff argued that the agreement was between her and the employer, not its president. Id.

22

This Court rejected that argument, finding that, under Eleventh Circuit law, non-parties may invoke a forum selection clause if they are "closely related" to the dispute "such that it becomes 'foreseeable' that [the non-parties] will be bound" by the contractual selection of a forum. Id. at *3 (quoting Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998)). If a non-party is closely related to the dispute, "the party is deemed to fall within the 'range of transaction participants, parties and nonparties, [that] should benefit from and be subject to forum selection clauses.'" Id. (quoting Lipcon, 148 F.3d at 1299). "Being a party to the agreement, even a third-party beneficiary, simply is not a precondition to enforcement." Id.

Plaintiff does not dispute that Petit could enforce the forum selection clause. Instead, Plaintiff posits the same arguments he used against MiMedx's Motion. That is, Plaintiff argues that his claims against Petit do not arise from or relate to the Agreement. However, Plaintiff's allegations against Petit are identical to those made against MiMedx. Specifically, Plaintiff alleges that Petit and MiMedx published defamatory statements against Plaintiff and the Court has already determined that those statements relate to the Agreement. As Petit argues, he will use the Agreement as a defense to Plaintiff's claims. Therefore, as with the claims against MiMedx, the Court finds that the claims against Petit relate to the Agreement such that the forum selection clause applies.

Like MiMedx, Petit argues that the Court must dismiss the claims because they are compulsory claims in the Florida Action. Plaintiff's only response to this

23

argument is that his Dodd-Frank Act claims cannot be heard in the Florida state court.

First, Plaintiff has not brought Dodd-Frank Act claims against Petit. Second, even if he had, the Court has already determined that the state court can likely hear Dodd-Frank Act claims. For all the foregoing reasons, Petit's Motion to Dismiss is **GRANTED**.[12]

### III.   CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Defendants' Motions to Dismiss [17, 18] without prejudice. The Court will not consider Plaintiff's Motion to Stay [36]. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 13th day of June, 2017

LEIGH MARTIN MAY
UNITED STATES DISTRICT JUDGE

---

[12] Because the Court determined that this case should be dismissed pursuant to *forum non conveniens*, it did not analyze the parties' arguments regarding the Colorado River abstention doctrine. However, Plaintiff did make several arguments as to why the Court should not abstain that could be construed as arguments against dismissal under the doctrine of *forum non conveniens*. For example, Plaintiff raised concerns about piecemeal litigation, the adequacy of the state court, and whether federal or state law would apply. However, to the extent those arguments are any different from arguments already posited by Plaintiff in opposition to *forum non conveniens*, the Court will not consider them as Plaintiff did not specifically tie them to the *forum non conveniens* issue.